EXHIBIT 1

# 4.2 Hunger Strikes

## I. Purpose and Scope

This detention standard protects detainees' health and well-being by monitoring, counseling and providing appropriate treatment to any detainee who is on a hunger strike.

Nothing in this detention standard is intended to limit or override the exercise of sound medical judgment by the clinical medical authority (CMA) responsible for a detainee's medical care. Each case must be evaluated on its own merits and specific circumstances, and treatment shall be given in accordance with accepted medical practice.

This detention standard applies to the following types of facilities housing ICE/ERO detainees:

- Service Processing Centers (SPCs);
- Contract Detention Facilities (CDFs); and
- State or local government facilities used by ERO through Intergovernmental Service Agreements (IGSAs) to hold detainees for more than 72 hours.

*Procedures in italics are specifically required for SPCs, CDFs, and Dedicated IGSA facilities.* Non-dedicated IGSA facilities must conform to these procedures or adopt, adapt or establish alternatives, provided they meet or exceed the intent represented by these procedures.

Various terms used in this standard may be defined in standard "7.5 Definitions."

## II. Expected Outcomes

The expected outcomes of this detention standard are as follows (specific requirements are defined in "V. Expected Practices").

1. Any detainee who does not eat for 72 hours shall be referred to the medical department for evaluation and possible treatment by medical and mental health personnel. Prior to 72 hours, staff may refer a detainee for medical evaluation, and when clinically indicated, medical staff may refer the detainee to a hospital;

2. The ICE/ERO Field Office Director shall be immediately notified when a detainee is on a hunger strike, declared or otherwise;

3. The detainee's health shall be carefully monitored and documented, as shall the detainee's intake of foods and liquids. The clinical director, designated physician or treating medical staff shall conduct a full clinical and mental health assessment and evaluation, and recommend a course of treatment, intervention or follow-up;

4. When medically advisable, a detainee on a hunger strike shall be isolated for close supervision, observation and monitoring;

5. Medical, mental health or hospital staff shall offer counseling regarding medical risks and detainees shall be encouraged to end the hunger strike or accept medical treatment;

6. Refusal of medical treatment shall be documented in the detainee's medical file;

7. Involuntary medical treatment shall be administered only with medical, psychiatric and legal safeguards;

8. A record of interactions with the striking detainee, the provision of food, attempted and successfully administered medical treatment, and communications between the CMA, facility administrator and ICE/ERO regarding the striking detainee shall be established; and

9. The facility shall provide communication assistance to detainees with disabilities and detainees who are limited in their English proficiency (LEP). The facility will provide detainees with disabilities with effective communication, which may include the provision of auxiliary aids, such as readers, materials in Braille, audio recordings, telephone

handset amplifiers, telephones compatible with hearing aids, telecommunications devices for deaf persons (TTYs), interpreters, and note-takers, as needed. The facility will also provide detainees who are LEP with language assistance, including bilingual staff or professional interpretation and translation services, to provide them with meaningful access to its programs and activities.

All written materials provided to detainees shall generally be translated into Spanish. Where practicable, provisions for written translation shall be made for other significant segments of the population with limited English proficiency.

Oral interpretation or assistance shall be provided to any detainee who speaks another language into which written material has not been translated, or who is illiterate.

## III. Standards Affected

This detention standard replaces "Hunger Strikes" dated 12/2/2008.

## IV. References

American Correctional Association, *Performance-based Standards for Adult Local Detention Facilities*, 4th Edition: 4-ALDF-2A-52, 4D-15.

National Commission on Correctional Health Care, *Standards for Health Services in Jails (2014)*.

ICE/ERO *Performance-based National Detention Standards 2011*: "4.3 Medical Care."

## V. Expected Practices

### A. Staff Training

All staff shall be trained initially and annually thereafter to recognize the signs of a hunger strike, and to implement the procedures for referral for medical assessment and for management of a detainee on a hunger strike.

### B. Initial Referral

Procedures for identifying and referring a detainee suspected or announced to be on a hunger strike to medical staff shall include obtaining from qualified medical personnel an assessment of whether the detainee's action is reasoned and deliberate, or the manifestation of a mental illness.

Facilities shall immediately notify the local Field Office Director or his/her designee when an ICE/ERO detainee begins a hunger strike.

1. Staff shall consider any detainee observed to have not eaten for 72 hours to be on a hunger strike, and shall refer him/her to the CMA for evaluation and management.

2. Medical personnel shall document the reasons for placing a detainee in a single occupancy observation room. This decision shall be reviewed every 72 hours. Medical personnel shall monitor the detainee in a single-occupancy observation room, when medically advisable and taking into consideration the detainee's mental health needs. If measuring food and liquid intake/output becomes necessary, medical personnel shall make a decision about appropriate housing placement.

### C. Initial Medical Evaluation and Management

Medical staff shall monitor the health of a detainee on a hunger strike. If a detainee engaging in a hunger strike has been previously diagnosed with a mental condition, or is incapable of giving informed consent due to age or illness, appropriate medical/administrative action shall be taken in the best interest of the detainee.

1. During the initial evaluation of a detainee on a hunger strike, medical staff shall:

    a. measure and record height and weight;

    b. measure and record vital signs;

    c. perform urinalysis;

    d. conduct psychological/psychiatric evaluation;

e. examine general physical condition; and

f. if clinically indicated, proceed with other necessary studies.

2. Medical staff shall measure and record weight and vital signs at least once every 24 hours during the hunger strike and repeat other procedures as medically indicated.

3. Qualified medical personnel may modify or augment standard treatment protocols when medically indicated.

4. Medical staff shall record all examination results in the detainee's medical file.

5. If the detainee refuses the initial medical evaluation or any treatment or other medical procedures, medical staff must attempt to secure the detainee's signature on a "Refusal of Treatment" form. If the detainee will not cooperate by signing, staff shall note this on the "Refusal of Treatment" form.

6. Any detainee refusing medical treatment shall be monitored by medical staff to evaluate whether the hunger strike poses a risk to the detainee's life or permanent health. See "Section V," "E, Refusal to Accept Treatment" below in this standard.

7. If medically necessary, the detainee may be transferred to a community hospital or a detention facility appropriately equipped for treatment.

8. After the hunger strike, medical staff shall continue to provide appropriate medical and mental health follow-up. Only a physician may order a detainee's release from hunger strike treatment and shall document that order in the detainee's medical record. A notation shall be made in the detention file when the detainee has ended the hunger strike.

9. Records shall be kept of all interactions with the striking detainee, the provision of food, attempted and successfully administered medical treatment, and communications between the CMA, facility administrator, and ICE/ERO regarding the striking detainee.

## D. Food and Liquid Intake and Output

After consultation with the CMA, the facility administrator may require staff to measure and record food and water intake and output as follows:

1. Record intake and output in the medical record using an IHSC "Hunger Strike Form" or equivalent;

2. Deliver three meals per day to the detainee's room unless otherwise directed by the CMA— staff shall physically deliver each meal regardless of the detainee's response to an offered meal;

3. Provide an adequate supply of drinking water or other beverages; and

4. Remove from the detainee's room all food items not authorized by the CMA. During the hunger strike, the detainee may not purchase commissary/vending machine food.

## E. Refusal to Accept Treatment

An individual has a right to refuse medical treatment. Before involuntary medical treatment is administered, staff shall make reasonable efforts to educate and encourage the detainee to accept treatment voluntarily. Involuntary medical treatment shall be administered in accordance with established guidelines and applicable laws and only after the CMA determines the detainee's life or health is at risk.

1. Medical staff shall explain to the detainee the medical risks associated with refusal of treatment, and shall document treatment efforts in the detainee's medical record.

2. The physician may recommend involuntary treatment when clinical assessment and laboratory results indicate the detainee's weakening condition threatens the life or long-term health of

the detainee.

a.  The facility administrator shall notify ICE/ERO if a detainee is refusing treatment, and the health services administrator shall notify the respective ICE/ERO Field Office Director in writing of any proposed plan to involuntarily feed the detainee if the hunger strike continues.  Under no circumstances may a facility administer involuntary medical treatment without authorization from ICE/ERO.

b.  The Field Office Director, in consultation with the CMA, shall then contact the respective ICE Office of Chief Counsel and the U.S. Attorney's Office with jurisdiction. After discussing the case, the attorneys shall recommend whether or not to pursue a court order. ICE policy is to seek a court order to obtain authorization for involuntary medical treatment. If a court determines that it does not have jurisdiction to issue such an order, or a hospital refuses to administer involuntary sustenance pursuant to a court order, ICE/ERO may consider other action if the hunger strike continues.

    1)  If a court order is to be pursued, ICE/ERO shall work with the local ICE Office of Chief Counsel to work with the U.S. Attorney's Office to make the arrangements for a court hearing.

3.  Medical staff shall:

    a.  document all treatment efforts and each treatment refusal in the detainee's medical record;

    b.  continue clinical and laboratory monitoring as necessary until the detainee's life or health is out of danger; and

    c.  continue medical and mental health follow-up as necessary.

## F. Release from Treatment

Only the physician may order the termination of hunger strike treatment; the order shall be documented in the detainee's medical record.