IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AJAY KUMAR | § | EP-19-MC-00205-FM |
| | § | |

**RESPONDENT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO THE GOVERNMENT'S SUPPLEMENTAL EMERGENCY
MOTION FOR ORDER OF AUTHORIZATION**

TO THE HONORABLE FRANK MONTALVO, U.S. DISTRICT JUDGE:

The Government has not met its evidentiary burden to prove that involuntary force-feeding is reasonable under the circumstances of this case. The record in this matter, including new expert testimony by Dr. Parveen Parmar, establishes not only that Mr. Kumar should be transferred to an outside medical facility for critical care, but that ICE protocol requires such a transfer. Second, the record lacks any competent, non-conclusory evidence that release of Mr. Kumar is not an alternative. For these reasons, Mr. Kumar respectfully requests that the Court deny the Government's Supplemental Emergency Motion for Order of Authorization.

As the Government notes in its motion, the standard set forth in *Turner v. Safley,* 482 U.S. 78 (1987) requires the Court to balance four factors before granting a motion for the extreme use of involuntary force-feeding on an immigration detainee. [Doc. 21, U.S. Reply to Resp to U.S. Supp Emergency Mot for Order of Auth, p. 2]. These factors include an analysis of whether: (1) there exists a "valid, rational connection" between force-feeding and the legitimate governmental interest; and (4) the presence of alternatives. *Turner,* 482 U.S. at 89-91. With regards to the fourth factor, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship

1

standard." *Turner*, 482 U.S at 89-91.  The burden to establish these factors is on the Government, though it is deferential, it is "not toothless." *Thornburgh v. Abbott,* 490 U.S. 401, 414 (1989).

I. **ON AUGUST 14, 2019, THE GOVERNMENT HAD CLEAR-CUT MEDICAL ALTERNATIVES RATHER THAN SEEKING AUTHORIZATION TO PURSUE THE EXTREME USE OF INVOLUNTARY FORCE-FEEDING.**

Here, the affidavit of Dr. Parveen Parmar, professor of medicine at the University of Southern California, makes clear that, on August 14, 2019: (1) Mr. Kumar's was receiving wholly inadequate medical care for a serious life-threatening condition in the El Paso detention center; (2) the ICE doctor[1] was obligated to follow ICE Performance-Based National Detention Standards (PBNDS) 4.7 and transfer Mr. Kumar to an outside facility; and (3) Mr. Kumar would have access to life-saving alternatives in an outside hospital setting. Ex. A, Aff. Of Dr. Parveen Parmar.

First, on August 14, 2019, Mr. Kumar belonged in an intensive care unit – not an ICE detention medical unit where he was receiving wholly inadequate care for a patient facing starvation. Ex. A, Sec. I, ¶¶1-7 (outlining, among other findings, that the ICE doctor chronically failed to pay attention to critical life-threatening findings, implemented a deficient monitoring regime, failed to regularly use interpreters to communicate with Mr. Kumar about his care, and refused to conduct essential follow-up care for Mr. Kumar).

Second, because ICE detention centers are not meant to be emergency or intensive care facilities, the PBNDS 2011 requires ICE to transfer patients facing life-threatening conditions to outside hospital facilities. 2011 PBNDS § 4.7(V)(A) (as revised in 2016), available at https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.  This standard applies to all detainees who are "gravely ill" or in "life-threatening" conditions. *Id.* at § 4.7. *See*

---

[1] Pursuant to this Court's order, Respondent refers to the physician in the ICE detention center as the "ICE doctor" and refrains from using the ICE doctor's full name. [Doc. 18].  Similarly, Respondent's expert, Dr. Parmar, refers to the ICE doctor as the "ICE physician." *See, generally,* Ex. A.

2

*also,* Ex. A, Sec. I, ¶10. One thing that both Dr. Parmar and the ICE doctor can agree on is Mr. Kumar was in life-threatening condition in the first half of August 2019.

However, that is where their agreements end. Dr. Parmar makes clear that this condition was made worse, not better, by ICE's medical care. Ex. A, Sec. I, ¶¶1-11. Dr. Parmar also controverts the ICE doctor's claim that the only medical intervention possible to support Mr. Kumar was force-feeding. [Doc. 22, p. 29:9-20]. Dr. Parmar makes clear that a hospital setting would have been better suited to attend to Mr. Kumar's severe condition than the ICE facility. Ex. A, Sec. I, ¶¶7, 10.[2] Mr. Kumar belonged in an intensive care unit – where he would have received close cardiac monitoring, much more consistent use of IV treatment to maintain critical blood pressure, and the use of IV supplementation. *Id.* at Sec. I, ¶¶4, 7, 10.

ICE provided wholly inadequate medical care to Mr. Kumar for his condition prior to August 14, 2019. ICE protocol – which itself measures the balance between institutional interests and detainees' rights – provides clear medical alternatives to force-feeding that were available to ICE on August 14. Under these circumstances, the request to force-feed Mr. Kumar was unreasonable under the *Turner* standard.

II. **RESPONDENT HAS PRODUCED COMPETENT EVIDENCE THAT THERE EXISTS AN OBVIOUS REGULATORY ALTERNATIVE TO THE USE OF INVASIVE NASOGASTRIC FEEDING; THE GOVERNMENT HAS PRESENTED NO COMPETENT EVIDENCE THAT THIS ALTERNATIVE IS NOT AVAILABLE IN THIS CASE.**

Second, the Government failed to meet its burden to provide the Court with sufficient evidence that release is not a ready alternative to force-feeding under the fourth factor in the *Turner* test. *Turner*, 482 U.S. at 89-91. To determine whether release is a "ready alternative,"

---

[2] The Government claims, without citation, that "detainees sent to the hospital typically refuse treatment. . ." [Doc. 21, p. 8]. The record here contradicts this conclusory and speculative statement. In fact, the Doctor agrees that Mr. Kumar was willing to receive IV treatment and imaging during his prior trip to the hospital. [Doc. 22, p. 16:1-15]. Mr. Kumar also testified that he would welcome an examination by outside physicians.

3

the Government must provide the Court with evidence that some reason exists for Mr. Kumar's continued detention under these circumstances. The Government has failed to provide the Court with any competent evidence supporting Mr. Kumar's detention.

As a preliminary note, the Government mischaracterizes Mr. Kumar's argument regarding release – claiming that he is asking the Court "to order the immigration court to release Mr. Kumar." [Doc. 21, p. 8]. On the contrary, Mr. Kumar merely points out that when a respondent presents competent evidence that release is an available alternative, the government cannot ask the Court for an order to force-feed a detainee without providing some evidence that the detainee's release is not a "ready alternative." 482 U.S. 89-91. The Government has failed to make this showing, and, for this reason, the Court should rescind the force-feeding order.

Mr. Kumar's detention in ICE custody is discretionary under 8 U.S.C. §1226(a)(2)(A) (the Attorney General may release an alien, pending a decision on whether the alien is to be removed from the United States, on "a bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General"). The regulations further provide that a Department of Homeland Security officer, "may, in the officers discretion, release an alien [not subject to mandatory detention]... provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 CFR § 1236 .1(c)(8).

Mr. Kumar's attorney, Linda Corchado, testified at the hearing that she has submitted an application for his release and that his request is pending before the Field Officer Director of Immigration and Customs Enforcement. She further testified that Mr. Kumar does not have a criminal history, does not pose a danger to property or persons, and he is likely to appear for any future proceedings. She testified that she is representing him in his claim for asylum which is pending before the Board of Immigration Appeals and that Kumar is a political activist and that

4

his father was killed by his persecutors. She also testified that he has strong community support including the support of Annunciation House, a non-profit trusted by the United States to provide hospitality to immigrants released into its care. The United States has failed to show that the release of Kumar is not a "ready alternative." *Id.* As the record stands, the testimony of Corchado and Kumar is unrefuted and demonstrates that release presents a viable alternative that undermines the reasonableness of the extremely painful and invasive force-feeding of Kumar.

The Government cites one unpublished decision from a district court in Florida in arguing that release is "unreasonable." *See*, [Doc. 21, p. 8] (citing *Dep't of Homeland Sec. v. Ayvazian*, No. 15-23213-CIV, 2015 WL 5315206 * 4 (S.D. Fla. Sept. 11, 2015)). In that case, in contrast to the record before this Court, the district court does not mention whether the hunger strikers were asylum seekers, whether they had strong claims to relief from deportation, whether their claims were pending before the Board of Immigration Appeals, whether they posed a danger to others or whether they were a flight risk. *Id.* Unlike the case at hand, there was no factual record with respect to release to allow the court in *Ayvazian* to meaningful assess whether the United States met its burden to show no viable alternative to force-feeding. *Id.* In fact, the district court in *Ayvazian* provides no reasoning at all for not considering release as an alternative to force-feeding. *Id.*[3]

Similarly, the Government declines to provide the Court an evidentiary basis for its administrative decision to not adjudicate Kumar's pending request for release. Rather, counsel for the United States asserts without evidence a generalized argument concerning "every detainee initiating a hunger strike so as to be released without having to go through the process established by Congress and destroying ICE's compelling interest in maintaining order." [Doc.

---

[3] A more instructive decision is *In re Soliman,* 134 F.Supp. 2d 1238, 1246 (N.D. Ala. 2001). In that case, the government met its burden under the *Turner* factors because it provided the court with particularized evidence that the respondent was a flight risk and presented a threat to the community if he was released. *Id.* The Government has presented no such evidence in this case.

5

21, p. 8]. However, this argument is a non-issue in the instant case because Mr. Kumar's request for release is made through the process established by Congress and he seeks release because he has a valid asylum claim and poses no risk of danger to the public.

Mr. Kumar is not seeking his release before this Court. Rather, he argues that the Government has failed to present evidence of an individualized reason as to why the government is continuing to detain and force-feed Kumar- a represented asylum seeker who poses no danger to the public and no flight risk. Without such evidence, the United States has failed to meet its burden in showing that no viable alternative to involuntarily force-feeding Kumar exists.

### III.  CONCLUSION

Based on the full evidentiary record before the Court, the Government's request to utilize involuntary force-feeding on Mr. Kumar is unreasonable. For this reason, the Court should deny the Government's Supplemental Order of Authorization to force-feed Mr. Kumar through involuntary nasogastric feeding.

Signed August 26, 2019.                    Respectfully submitted,

                                                       THE LAW OFFICE OF LYNN COYLE, P.L.L.C.
                                                       2515 North Stanton
                                                       El Paso, Texas 79902
                                                       (915) 532-5544
                                                       (915) 532-5566 Fax

By: _____
                                                        LYNN COYLE
                                                        Texas Bar No. 24050049
                                                        lynn@coylefirm.com
                                                        CHRISTOPHER BENOIT
                                                        Texas Bar No. 24068653
                                                        chris@coylefirm.com

**CERTIFICATE OF SERVICE**

I filed this *Motion* and served this motion on other parties via electronic mail.

*/s/ Christopher Benoit*
Christopher Benoit
